Mr. Bowman? Yes. Good afternoon. Good afternoon, Your Honor. We called your case, and I'm Judge Dennis, of course, and Judge Higginson and Judge Costa are on the panel with me, and we'll hear from you, starting with Mr. Tucker. I believe you're muted. I'm sorry, Your Honor. May it please the court. My name is Marcus Tucker. I represent Cannon Oil and Gas in this case. I believe this case is significant because a Texas-based oil and gas contractor, KLX, is seeking to avoid its choice of Texas law, and allowing KLX to avoid its Texas choice of law could potentially allow other Texas oil and gas contractors to dishonor their indemnity obligations when they perform work outside Texas. Your brief emphasizes that theme, that it's the Texas company that's trying to invalidate what's allowed under Texas law, basically, and a Texas choice of law provision and the indemnity that's allowed under Texas law. I understand instinctually why that might make a difference, but does any law, either the case law or the restatement, say that in looking at whether a choice of law provision is going to be enforced, you look at the location of who's seeking to invalidate the choice of law provision? Does that make sense? Yes, Your Honor. I think it does matter with regard to Section 188 analysis. If you look at the Sonat case in particular, in that case, and that was actually the second point I was going to talk about today. In that case, the Texas Supreme Court said the location or the domicile of the contractor, in that case, CUD, who was going to owe the contractual indemnity was significant. Now, in that case, CUD, you really couldn't tell where CUD's principal place of business was, so it was less important in that case, but I think a common theme throughout these cases is they look at where the principal place of business is of the party who is owing contractual indemnity. That takes me to my second point under Section 188, but I would actually like to cover and go back to the outline that I was going to present to the court. Really, I was going to try to cover two points today. The first point I wanted to address is to address how I believe the district court failed to find that the work order is a separate standalone agreement. The second issue I want to address today, Your Honors, is how a choice of law analysis, which I touched on a minute ago under Section 188, requires Texas law to be applied to interpret the work order in the mirror. Let me briefly address the first point or the first issue. I believe that the reasonable interpretation of the work order and the mirror is that the work order is a separate standalone agreement. Why does this issue matter? From what I looked at, the master agreement and the work order contain a Texas choice of law provision. Either one has a Texas choice of law provision, and then there's just this issue with Clause C. Are you having trouble hearing? I can hear you, Your Honor. It went mute. You muted yourself. I'm trying to turn up the volume. Both of them have Texas choice of law provisions, right? The master agreement and the work order. And you want that Texas choice of law provision, right? That is correct, Your Honor. I'm having trouble understanding why this whole issue about the work order matters so much when there's a choice of law provision in either contract, and I guess it's because of that Clause C. Yes, Your Honor. It's the interpretation that KLX has given the Clause 13C in the mirror. Why isn't that just a savings clause? There's Texas cases saying that's just a savings clause that means the indemnity applies even if some rule of law limits it, it applies to the full extent it can. Well, Your Honor, that's a perfectly reasonable interpretation of that provision. I don't think that provision actually applies, and I argued that in my brief. I think it's difficult to really read 13C and come up with a reasonable interpretation, but if you can come up with a reasonable interpretation of 13C, that's just as good as any of them. But if 13C does apply, what KLX argues is that somehow 13C neutralizes the choice of law provisions in a sense that you really, it basically does not allow you to perform a choice of law analysis under the SONAT case. That's really what 13C is all about. So briefly, there's three reasons why I think the work order is a standard stand-alone agreement, and then I will get to Section 188. Really, the work order, if you agree with KLX's interpretation of 13C, should be interpreted as a stand-alone separate agreement, because really what the District Court did is it said the work order agreement falls within the scope of the Section 2 of the MIRA, which includes the term work order. And because of that, any inconsistent term in the work order is overridden by the MIRA. And there's three reasons why I don't think that's correct. One is, if you really look at what this work order agreement is, it's not a work order like you traditionally would have a work order where a customer is requesting services or communicating with the KLX to provide its terms, and that's really what is meant by Section 2, the term work order. It's not a work order agreement. Secondly, if you look at the purpose of Section 2, it's really to prevent this battle of forms situation where you have a KLX master equipment rental agreement, and you have customer work requests and terms and other communications coming in, and the MIRA is trying to prevent those terms from conflicting with the customer communications. It's not meant, in this case, to reconcile differences between a work order agreement between KLX and Canon. And then the third reason is if you look at Section 20 of the MIRA, Section 20 realizes that you can have other agreements that vary the terms of the MIRA, and in this case, we do have one, and that's the work order because the MIRA's effective date is May 12, 2015, but the work order was signed and was effective later based on when it was signed. And so as a result, if there are any inconsistent terms in the work order from the MIRA, the inconsistent terms in the work order modify or change the MIRA, and there's a contract construction principle, and I'll move on to Section 188 that says if you have a prior agreement term, and then you have a later agreement with the same parties with an inconsistent term, the inconsistent term rescinds the term in the prior agreement, and that's the BRO case. So basically, you have two agreements. You have the work order, and you have the MIRA, and I believe based on the contract construction that I just gave the MIRA in relation to the work order, you should be able to enforce the work order separately, and there's a Texas choice of law clause in there, which brings me to my second point that I want to talk to you about today, and that is the choice of law analysis. I believe under the choice of law analysis that should be applied, Texas law should be applicable to interpret the work order or the MIRA based on the justified expectations of the parties under the SONAC case, and KLX's Texas domiciles we talked about earlier under Texas choice of law principles, and what I want to focus on is what I mentioned earlier, and that is Section 188 of the restatement, and if you go back and you look at what the district court did, they performed a Section 187 analysis to determine whether the Texas choice of law clause in the MIRA was enforceable, and I submit you should do the same with regard to the work order, and when you do that. The Supreme Court in SONAC didn't say that, yes, we look at the justified expectations, but they don't control when they're substantially outweighed by the interest of the state with the invalidating rule. I would look at SONAC differently, Your Honor. I'm quoting from them. Okay, well, I guess the way I look at it, Your Honor, is that Texas with KLX's domicile in Texas together with the expectations of the parties that they have in the agreements, that there's one requirement in both contracts that requires either party, both parties to go out and get $2 million worth of insurance, and the reason that's in there is so that the agreements can comply with the Texas rule. Remind me, the district court cited this case a fair bit. I didn't see it in your principle or your reply briefs, but Judge Costa and I were on it, the Cardone case. Is that case just dissimilar, or I thought, albeit non-compete clauses, but I thought there, too, we had an overriding Wyoming fundamental policy. Go ahead. I didn't mean to interrupt you, Your Honor. In that case… Cardone, yeah. In Cardone, I look at Cardone similar to the Texas Supreme Court's Wackenhut case, and in those cases, the overwhelming focus in those cases was the fact that you had a non-compete agreement in a Texas venue, and whether that was enforceable or not, I guess the same thing would be in Oklahoma, and in that case, I don't think you have… I think it's limited more to the non-compete scenario than the situation where you have a Section 188 analysis where you have to balance the factors, and you have no place of negotiation. You have no place of… I mean, 188's always a consideration, and here you have… On the other, there's a Wyoming company. The work's done in Wyoming. A Wyoming citizen is injured, and the underlying lawsuit for which indemnity is being sought is in Wyoming. So, you've got all that up against the fact that one of the companies is based in Texas, and the parties expected this indemnity to apply. Well, I would direct it this way, Your Honor. Where I was going is I really think the Wyoming concerns, for example, with the Wyoming Anti-Indemnity Act, are more related to whether you have a conflict of fundamental Wyoming policy and a conflict of fundamental Texas policy. I think that's where the Wyoming interest really lies. Where I'm trying to refocus what I think is the key determination in this case is the Section 188 analysis where you look at the factors of 188 and the place of performance and the place of negotiation where it's obviously a multi-state contract. And in those situations, you look at the justified expectations of parties based on the contract terms and the domicile. And so, you have basically three factors under Section 187. You have Section 188, you have the material greater interest, which state has the material greater interest, and then you have, thirdly, this public policy issue. And so, what I'm trying to do is I'm focused, and KLX has to prove all three to prevail in this situation. So, I'm trying to focus the court on Section 188 because I think under Section 88, KLX cannot meet its burden of proof. And so, the concern in the Cardone case, as I look at it, more concern the public policy. There's public policy concerns in this case, but I would argue, really, if you look at the public policy in this case, the public policy in Wyoming is that you want to protect the safety of the workers. In Texas, it's more unequal bargaining power. I don't really see that. But as you say, the policy of Wyoming only comes in at the third level. You said you're focusing on the 188 factors, which you don't even get to Wyoming policy. But why don't, for those factors, isn't it relevant that it's an injured Wyoming citizen, that the injury happened in Wyoming, that the underlying lawsuit for personal injury is in Wyoming? They might not be dispositive, but are you saying those aren't even factors we consider? Well, under Section 188 analysis, Your Honor, I would submit they really don't come into play directly, and they only indirectly come into play with respect to the place of performance. But under the SONAC case- And also, the domicile residents of parties, et cetera. All right. You don't have much time left, so you can finish up. OK. What I was going to say, Your Honor, is focusing on Section 188, I realize this happened up in Wyoming, and I realize it involved a Wyoming citizen, and my client is from Wyoming. But here we have a situation where you have a Texas contractor choosing Texas law, and if you look at Section 188 analysis under the SONAC case, you should have come to the conclusion that Texas law, choice of law, should be enforced. Thank you. Thank you, Mr. Tucker. Mr. Bowman? Good afternoon, Your Honors. My name is Zach Bowman, and I'm here for KLX Energy Services. I think some of the court's questions hit the nail right on the head, and especially with DeSantis, Cardone, and Sanat. Looking at DeSantis, which was relied upon quite a bit by Cardone, a quote from that is that the freedom to choose what jurisdictions law will apply is not unlimited, and I think that's what we're dealing with here. And I think Judge Higginson hit it on the head by pointing to Sanat and pointing out that, yes, the justified expectations of the parties are a factor that we're going to look at, of course, unless they are outweighed by the interest of the state with the invalidating rule, which is Wyoming in this case. But there's a heavy—opposing counsel's right there, just the tone and the emphasis in Sanat. It does make it awkward, and I remember the feeling this in Cardone. Your client's a Texas-based company that chose Texas law. I mean, maybe that's debatable a little bit, but—and they agreed to indemnify, and they got insurance to indemnify, and now they're backing out. I mean, am I—is that just the wrong flavor look at this case? There's a couple wrong flavors about that. Again, I think getting back to—I think one question that also got to the point was, what does it matter if we're applying the work order or the master agreement? Both have a Texas choice of law. Ultimately, though, we'll get to Wyoming law under the choice of law analysis, regardless of which agreement we look at. And I think ultimately why it matters here, and I think why opposing counsel wanted to spend so much time on arguing that the work order should control, is we do have Section 13C in the master agreement noting that applicable law will govern to the extent possible on the indemnity issues. That could have clearly said Texas law with regards to indemnity, but that provision specifically speaks to indemnity and reflects the expectations of the parties that applicable law will govern that issue. I don't want to spend too much time because I think we get to the same place. You're right, but that could have meant applicable law because Texas law in this field is nuanced, or it could change. I think it could have meant a number of things, at least looking at the face of it. I think these are sophisticated parties that recognize every state's going to have its own patchwork of laws regarding indemnity issues. And when we're looking at a case that really was within Wyoming's borders, which is what this court looked at in Cardone when it was looking at Oklahoma laws to non-competes. In that case, it was employees within Oklahoma, negotiations in Oklahoma, work that was largely performed in Oklahoma. Remind me, in that case, did we say that ascertaining whether a state's rule is fundamental is as simple as saying, is it, has it been enacted into law? In order to know what's the test for what's fundamental. So the test. Right. That's a great question. The test I've looked at is the Supreme Court spoke about in DeSantis, where they really got to the point very quickly of saying we're assuming this is fundamental because in that case, it was a statute that would actually invalidate a contract. So Justice Heck writing for the court in DeSantis said, if you have a statute that's going to actually find a contract, a type of contract is void or unenforceable, then it's safe to assume that the fundamental policy. Justice Brister, when he was writing the Chesapeake opinion out of the Houston Court of Appeals, also looked at the fact that if the statute is going to expressly state it has to do with public policy, then we can also assume that that's a fundamental public policy. And in this case, we have language for both of those issues. The statute is is void and declares these types of contracts void and unenforceable as against public policy. So we're very safe in assuming here that this is a fundamental policy of Wyoming. And the case law speaks to that coming out of the Wyoming Supreme Court and the Ninth Circuit, looking at these issues, that this is a fundamental policy of Wyoming to protect workers and to ultimately hold parties responsible for their own negligence. And it's important to remember here that ultimately we are here because Cannon is seeking to avoid responsibility for its own negligence, for harm occurring at Cannon's project to a KLX employee. And Wyoming has seen it fit to ensure that. Well, that hasn't been really resolved, right? You may know the record better than I do, but it was your employee and he was working on your equipment. He was servicing our equipment, yes, but the lawsuit is only against Cannon, Your Honor. KLX is not a party to that. There's no negligence claim against KLX. There's only a negligence claim against Cannon. So if if KLX is at all to indemnify here, it's purely going to be for Cannon's negligence. And that's what Cannon is seeking to avoid. And that's precisely what the Wyoming statute is designed to prevent. Getting also back to DeSantis, which I think is also another case that's on all fours with this case. In that case, you had a Florida employer who had a choice of law provision in his contract for Florida law. You had an employee that largely worked in the Houston area of Texas, left that company and started competing in Texas. And ultimately the court determined there, again, that the freedom to choose the jurisdiction is not unlimited. There were more contacts with Texas. It was a fundamental policy of Texas regarding covenants non-compete. And and it chose to enforce Texas law there. We're pretty we're in pretty similar footing here. We've got largely Wyoming contacts, a Wyoming well site, a Wyoming job, a Wyoming employee and a Wyoming lawsuit. And in fact, I think looking at that Cardone opinion where it found those facts were also similar to DeSantis. This court stated, given the nearly identical alignment of interest in this case in DeSantis, with Oklahoma taking the place of Texas and having more of the affected parties within its borders, what argument can be made for reaching a different result than the Supreme Court of Texas? And I think ultimately that also gets to the section six factors we need to consider, which is predictability and consistency. It's very predictable to expect that performing services at a well site in Wyoming where a Wyoming employee gets injured, who then files suit in Wyoming, to expect that Wyoming law is going to apply to that circumstance. And what about speaking of Section six, the expectations that the other side emphasizes? And the parties didn't just enter into a mutual indemnity agreement. They went out and bought insurance and reliance on it. So what's your response to the expectations factor? I think, again, the reason I think that opposing counsel spent a great deal of time focusing on the work order, is that language in 13C that says the applicable law will govern the indemnity issue. I think that reflects the expectations of the parties. And the specific language is that the indemnity shall only be effective to the maximum extent permitted by applicable law. Later on in that same section, it even specifically says if operations are performed in Texas or under Texas law and then has a provision for the insurance. So, again, that paragraph recognizes that applicable law may not be Texas, because we know we're dealing with a patchwork of regulations with different states. And the parties here were well aware that a large majority of this work was going to occur in Wyoming. And that's something that that Sanat really didn't have. Sanat was really a multi-state contract. It was difficult to say that any state was looming large in the minds of the parties. But that's not the case here. Cannon largely performs work in the northwestern states, according to their declaration. That's Wyoming, Colorado, Utah, Idaho, Montana and Nevada. A couple of East Coast states, not Texas. Texas is not included where Cannon in its own declaration says it does business. So when looking at the location of the subject matter of the contract, which is one of those factors under 188, KLX had been doing work for Cannon for years. And in the two years before this accident, over 90 percent of that work was in Wyoming. And one thing Sanat pointed out was that in looking at the restatement, section 196, that that place of performance and subject matter is going to be of paramount importance in determining which state has the most contacts. And that can be either expressly stated in the contract or it can be inferred from the contract's terms or the nature of the services involved or from other circumstances. So here we do have an affidavit in the record that most of the work between KLX and Cannon was in Wyoming. So, again, even getting back to justified expectations, it was expected that this work was going to be performed in Wyoming and that Wyoming law could very well govern the indemnity provision. Opposing counsel, I don't know if he got to spend much time on it yet, but did brief in opposition to this being a fundamental policy. But again, looking at the language of the statute itself, that Wyoming law declares these types of provisions against public policy and is void and unenforceable. Under the Texas Supreme Court's ruling in DeSantis and under the Houston Court of Appeals in Chesapeake, which was an en banc opinion, if the legislature is taking the step of identifying the public policy and voiding a contract, it's safe to assume that's a fundamental policy. And the courts we cited in our briefing also support that. I know the court very quickly asked questions about, you know, what does it ultimately matter between the work order and master agreement? And the court will see that in a lot of these opinions and that other choice of law cases, not coincidentally, are often dealing with a master service agreement when we're talking about indemnity provisions. The master agreement here and the work order were actually executed by Canon around the same time. The master agreement states it will control over any work orders. And this document is titled a work order, even though Canon would like it to be a different type of agreement. So ultimately, the master agreement does control. And at the very least, there's no reason to not consider both contracts when looking at this issue. And I think the reasonable expectations of the parties are reflected in that master agreement that Wyoming law could control. So when looking at under choice of law principles and again, getting back to Cardone, actually, this court stated that contractual choice of law provisions are not so unassailable as, say, arbitration clauses or choice of venue provisions, because they're actually dictating the substantive law that will apply. This court stated they create more tension with the state's power to regulate conduct within its own borders. So it is within the interest of Texas choice of law principles and the restatement to apply consistently the law of states where the conduct at issue largely occurs within that state's borders. And I think this court would agree that overwhelmingly here, those all point to Wyoming. So we're online with Cardone. We're online with DeSantis and finding that Wyoming law ultimately applies. And because we're here, because Canon is seeking to avoid responsibility for its own negligence, I think that that clearly conflicts with the goals of the Wyoming statute and Wyoming law would invalidate this contractual provision. So when we go through that three step analysis under the restatement, again, regardless of whether on the work order or the master agreement, we can find that Wyoming has a more significant relationship under 188. The application of Texas law would contravene a fundamental policy of Wyoming under 187 and that Wyoming has a materially greater interest in determining the issue of indemnity. Just as the Texas Supreme Court looked at covenant not to compete law and DeSantis in determining that Texas had a materially greater interest there. So ultimately, the district court went through the correct analysis under all these factors and was correct in granting summary judgment for KOX Energy. And unless the court has any further questions, that is why we asked the court affirm the district court's judgment. Thank you, Mr. Bowman. Mr. Tucker, you have five minutes for rebuttal. Thank you, Your Honor. I guess I would respectfully steer the court in this direction. This is a unique type of contract or type of business in oil and gas. And I would like to steer the court towards the direction of the oil and gas cases that have looked at these master service agreements, as opposed to the non-compete cases. I truly think that when you have to analyze these oil and gas cases, you have to look at other cases that have dealt with similar situations and try to apply them using Section 188 and the other Section 187 factors. I just don't think you can. Sonat applied Louisiana law, and the injury happened in Louisiana. So to me, Sonat's not a case where you have this issue of it's going to be enforceable in one place where the injury didn't happen versus there's a place where the injury happened, but the agreement would be unenforceable. And I agree, it's not always going to work that way, Your Honor. I think in Sonat, the court didn't look at the place of negotiation, the place of performance, place of contracting, because it was a multi-state contract. But my point is, there was a provision in that case that guided the court to the conclusion that the expectations of the parties was that Louisiana law would apply. And in that case, the accident happened. Well, you can't assume that the choice of law provision would apply, but the expectation is that the agreement would itself be enforceable. Isn't that what the case is saying? So here's your argument. I just want to make sure I'm clear. It is a multi-state contract, which it is, because when the parties entered into the contract, they didn't know where they were going to work. It was going to be all over the West. But when it's a multi-state contract, you look at the justified expectations of the parties based on the contract provisions themselves. And in this case, you have basically Texas Oilfield Anti-Indemnity Act avoiding provisions, Fair Notice Act avoiding provisions. And so if you look at the mirror, whether you look at the mirror, the work order, or both of them together, I think the parties expected that Texas law would apply. That's that's my point. And my other point, your honor, is I think in the covenant not to compete. I mean, why is that a greater you're right. That's certainly an expectation. I agree 100 percent with you that they expected the indemnity to apply. I think you've sent some disagreement that's not there. But why isn't it just as much the case that the parties expected a covenant not to compete to apply? They wrote it into the agreement. It was part of the employment contract. Why does the oil field get some special or oil industry get some special status under the restatement factors? I guess that's that's what I'm not understanding. Well, because I think the justified expectation of the parties to me is look at the other provisions in the contract to see what the parties expected. Not the part that not the provision, not the not the noncompete provision itself, but other provisions in the contract to see what the parties expected. And so, too. So I would also encourage the court to look at the Chesapeake case in the Banta case. I'm encouraging the court to look at the oil and gas cases because the Texas Oilfield Anti-Indemnity Act can have an extraterritorial effect. I mean, KLX acts like it cannot. And I don't think that's a fair characterization of it. And I believe that if you look at the purpose behind the Oilfield Anti-Indemnity Act, it is to ensure that Texas domiciled contractors do not. Overstep their bounds on the one hand when enforcing indemnity provisions, but at the same time, you know, they the choice of law that they choose should be respected in the in the realm of freedom of contract. And that's what I'd like the court to focus on. And I appreciate the court's time. And I would respectfully submit that altogether, the agreements, the choice of law should be enforced. But if you think Section 13 C has some special powers, then the work order ought to be enforced separately. And I appreciate your time. And that's that's my argument for today. OK, thank you, counsel. This case will be submitted. We have one more case.